IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

COMMODITY FUTURES TRADING
COMMISSION and SECURITIES
EXCHANGE COMMISSION,

                                                              ORDER
                    Plaintiffs,

        v.                                          20-cv-075-wmc & 20-cv-076-wmc,
                                                              Consolidated
EDWARD S. WALCZAK.

                    Defendant.


        Following consolidation of two, separate suits brought against defendant Edward

Walczak by plaintiffs Securities Exchange Commission ("SEC") and Commodity Futures

Trading Commission ("CFTC"), for alleged fraud on investors, the court now addresses the

parties' pending motions in advance of the Final Pretrial Conference ("FPTC"), beginning

with their miscellaneous motions reflected below.  These motions are considered together

as much as practical where the parties' arguments overlap.[1]


                                        OPINION

## I.  Motions to Reconsider ('76 DKT. #91; '75 DKT. #81)

        Defendant seeks reconsideration of the court's summary judgment decision that

granted partial judgment to the SEC as to those claims brought against the defendant not

requiring proof of scienter.  Because Walczak has better articulated a legitimate question

regarding a jury's possible finding in his favor as to materiality of his statements to investors

---

[1] To avoid confusion in identifying to which case a docket citation refers, docket entries from case
no. 20-cv-75 will be noted by "'75" in front of the citation, and case no. 20-cv-76 will be noted by
"'76" appearing before the citation.

that will have to be addressed at trial with respect to the remaining claims anyway, as will the specific nature of his claimed misrepresentations, the court is persuaded that the most practical approach is to submit all such questions for all claims to the jury in the first instance, although a directed verdict or judgment notwithstanding verdict may still be appropriate at the end of trial as to plaintiffs' non-scienter claims.  Accordingly, defendant's motion for reconsideration is GRANTED.   Additionally, plaintiff CFTC's motion for reconsideration of the denial of summary judgment for similar non-scienter claims, which principally sought to take advantage of the SEC's erstwhile success at to those claims, is now DENIED AS MOOT.

## II.  Motion to Strike Portions of the McCrary Rebuttal Report ('75 DKT. #66)

Defendant seeks to strike the second opinion offered in Stuart McCrary's rebuttal expert report, arguing that it is not proper rebuttal.   ('75 Def.'s Br. (dkt. #66) 1.) Specifically, McCrary's second opinion is that performing volatility stress tests in addition to price stress tests does not alter the conclusions drawn in McCrary's original report.  (Id. at 2.)  Defendant argues that this is simply intended to bolster McCrary's original report, rather than rebut his experts' opinions.

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party."  *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008).  Here, it is fairly apparent that McCrary's second opinion responds directly to Walczak's expert, Michael De Laval, who opined that shifts in implied volatilities are essential for stress-testing and "adjusting these factors could very well negate the portfolio performance forecasts coming from price shifts alone."  ('76 De Laval Report

(dkt. #36-43) ¶ 23.)  Since McCrary's secondary opinion seeks to rebut this opinion by showing that shifting volatilities did not actually change the underlying results of the stress tests relevant to this case, it is a proper rebuttal and this motion is DENIED.

## III. Motions *in limine*

### A. Plaintiffs' Motions *in limine*

#### 1. TO EXCLUDE THE OPINIONS AND TESTIMONY OF MICHAEL DE LAVAL ('75 DKT. #63; '76 DKT. #74)

The admissibility of expert opinion is guided by Rule 702 of the Federal Rules of Evidence, which the Supreme Court has interpreted as allowing expert testimony that is both reliable and relevant.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993).  In turn, the Seventh Circuit has boiled down the requirements of Rule 702 into a three-part test requiring the district courts to evaluate:   "(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony."  *Gopalratnam v. Hewlett-Packard Company*, 877 F.3d 771, 779 (7th Cir. 2017).

Plaintiffs CFTC and SEC take slightly different approaches in seeking to bar De Laval's testimony in particular.  The court will assess each party's arguments in turn.  First, the CFTC emphasizes that the ultimate question in this case is whether defendant Walczak's actions were in line with his stated risk-management procedures; however, De Laval's testimony does not provide any information on that question.  ('75 CFTC Br. (dkt. #64) 4.)  Rather, the CFTC would boil down De Laval's report to four conclusions:  (1) OptionVue stress tests are of limited utility; (2) A portfolio manager is not expected to act

3

on low-probability information; (3) Walczak used shifts in volatility when stress testing his portfolio, which may change whether there is a drawdown; and (4) Walczak received risk metric reports daily and often traded in response to those reports.  (*Id*. at 1-2.)  The CFTC argues that each of those opinions are just red herrings, warranting the striking of his entire report.

Certainly, each of these four opinions may have vulnerabilities in both their assumptions and arguable relevance, but they also arguably go to the question of materiality.  Specifically, De Laval's first opinion on the usefulness of OptionVue graphs at different times *may* aid the jury in deciding whether an alleged misrepresentation was material to a reasonable investor, although rejection of that opinion or that a typical investor would have such an understanding, could underscore defendant's liability if he made contrary statements.  As for De Laval's second opinion, general industry expectations are not *directly* related to Walczak's promises, but may provide insight into what investment advisors would have understood Walczak to be doing on risk management as he described it during the House Calls.  The CFTC suggests that De Laval's third opinion is only based on conjecture; however, it seems that De Laval's point is to introduce complexity to the calculation of drawdowns using his extensive experience with options trading.  To the extent that De Laval's failure to run actual calculations is a weakness in his opinion testimony, plaintiffs are welcome to highlight that during cross-examination, just as they might highlight any failure to equate his opinion with that of a reasonable

investor.[2]  Finally, the CFTC notes that De Laval's opinion on risk reports is flawed, as it seems to leave out certain risk reports.  ('75 CFTC Br. (dkt. #64) 10-11.)  Again, the fact that De Laval may have excluded some reports is a flaw plaintiffs are welcome to exploit at cross-examination.

The CFTC's other criticisms of De Laval's proposed testimony also go to its vulnerabilities to cross, but as Seventh Circuit has explained, "[t]he fact that an expert's testimony contains some vulnerable assumptions does not make the testimony irrelevant or inadmissible."  *Stollings v. Ryobi Technologies, Inc.*, 725 F.3d 753, 768 (7th Cir. 2013).  Thus, plaintiffs are welcome to question De Laval further on weaknesses in his opinions or his qualifications "through cross-examination."  *Id*.

The stronger argument against De Laval's report, made by the SEC, is that he makes many statements with no discernible support or basis and seems to parrot many of defendant's legal arguments.  ('76 SEC Br. (dkt. #75) 5-8.)  It is axiomatic that expert testimony must be "based on sufficient facts or data," Fed. R. Evid. 702(b), and that legal conclusions are prohibited under Rule 704.  The line between legal conclusions and applying facts to a legal framework is thin, but "there is a difference between stating a legal conclusion and providing concrete information against which to measure abstract legal concepts."  *Sanders v. City of Chicago Heights*, No. 13 C 0221, 2016 WL 1730608, at *7 (N.D. Ill. May 2, 2016) (quoting *United States v. Blount*, 502 F.3d 674, 680 (7th Cir.

---

[2] The court reminds *both* sides that experts will *not* be allowed to express opinions *or* the underlying basis for them unless already timely disclosed in a report provided under Rule 26(a)(2).  Thus, the proponent of any expert testimony should be prepared to provide a cite by page and lines to the underlying report if an objection were made to it being "beyond the scope" of the report.

2007)).  Stated generally, experts can talk about general practices and their understanding of what defendant did in practice, but cannot opine on what defendant actually told or intended to tell investors or argue the legality of defendant's actions.

De Laval's expert report frequently verges on unsupported advocacy, such as his criticism that "[i]n paragraph 87 of its complaint, the CFTC makes light of the most important point of this quote . . . Mr. Walczak is clear in pointing out that the 8% drawdown is not something he can guarantee." ('76 De Laval Report (dkt. #36-43) ¶ 30.) As such, the court agrees that some portions of De Laval's report must be struck, while disagreeing that the report should be struck as a whole.  The court will provide a redlined copy of the report to parties for further discussion at the FPTC.  Thus, this motion is GRANTED IN PART and DENIED IN PART.

## 2.  TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO DEFENDANT'S OWN INVESTMENTS IN THE FUND ('76 DKT. #56)

Plaintiff SEC moves to bar evidence and argument related to Walczak's own investment in the challenged fund because he refused to disclose information about personal investments during discovery.  ('76 SEC Br. (dkt. #57) 1.)  In response, Walczak argues that:  (1) the SEC both failed to seek the court's assistance to compel production of his financial documents; and (2) it is in any event, likely now in possession of Walczak's investment information, as provided to the CFTC.  ('76 Def.'s Opp'n. (dkt. #118) 2.) Because the CFTC's and SEC's cases have been consolidated, the court will RESERVE ruling on the merits of this motion pending further information from the parties at the

FPTC as to what financial records have been disclosed to plaintiffs collectively, and whether this motion *in limine* is now moot.

### 3. TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO UNDISCLOSED EXPERT OPINIONS ('76 DKT. #58)

Plaintiff SEC next moves to bar testimony from any undisclosed experts, and specifically with respect to a study done by Catalyst employee Daniel Saffrin. ('76 SEC Br. (dkt. 59) 5.) In response, Walczak represents that Saffrin will simply testify as a fact witness about calculations he made during the ordinary course of his employment. ('76 Def.'s Opp'n. (dkt. 117) 1-3.) Given that Saffrin will only be called as a fact witness, his testimony will be limited to work performed in the ordinary operation of the fund during the relevant period of the alleged fraud. The court will discuss the specific boundaries of Saffrin's testimony with the parties further at the FPTC. As such, this motion is GRANTED IN PART AND RESERVED IN PART.

### 4. TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO RELIANCE AND LOSS CAUSATION ('76 DKT. #60)

Next, the SEC asks to bar defendant from making any arguments regarding investors' reliance or the cause of the fund's losses. ('76 SEC Br. (dkt. #61) 1.) As the SEC notes, neither loss causation nor reliance are required elements of securities fraud, making any argument to that point misleading or irrelevant. (*Id.*) Walczak does not dispute that loss causation and reliance are not elements, but instead argues that the evidence at issue *is* relevant to the elements of materiality and scienter. ('76 Def.'s Opp'n. (dkt. #111) 3.) In particular, he argues that whether investors did, in fact, rely on his

statements is potentially probative of whether a hypothetical investor would have found his statements material.  (*Id*.)  Not only does this seem probative of materiality, but other district courts in the Seventh Circuit have found that "the actual [investors'] own testimony is both persuasive and revealing" of what a hypothetical "reasonable investor" would find material.  *E.g.*, *Branch-Hess Vending Servs. Employees' Pension Tr. v. Guebert*, 751 F. Supp. 1333, 1340 (C.D. Ill. 1990).  Absent contrary caselaw from plaintiffs, therefore, Walczak may provide evidence of actual investors' understanding of the fund, and whether they found material to their own investment decisions defendant's allegedly fraudulent statements.

As for the question of loss causation, Walczak argues that evidence of the market making unprecedented moves *is* relevant to whether his statements were false at the time they were made.  (*Id*. at 7.)  However, plaintiffs' argument is not that Walczak unsuccessfully executed his risk management strategy; it's that he didn't follow the risk management strategy in the first place, despite repeatedly representing that he would and did.  The SEC also claims that Walczak told investors his risk management protocol would protect the fund even during extreme market changes.  ('76 SEC Br. (dkt. #61) 8.)  Thus, whether or not a market change was unusual is immaterial to the elements of plaintiffs' claims.  Even so, Walczak will be allowed to introduce evidence to the jury that his intent was to follow a risk strategy in good faith by using the OptionVue software (and potentially other information) when a large drawdown seemed likely, but something he was unable to accomplish due to the unforeseeability of the size of an unusually rapid and sizable

drawdown.  Accordingly, plaintiff's motion is GRANTED IN PART AND DENIED IN PART.

5. **TO EXCLUDE EVIDENCE AND ARGUMENT ABOUT WHETHER OR NOT VICTIMS BELIEVE THEY WERE DEFRAUDED AND SPECULATING ABOUT DEFENDANT'S INTENTIONS OR MENTAL STATE ('76 DKT. #62)**

The SEC also seeks to exclude *any* testimony about whether investors believe they were defrauded or what other witnesses *believed* Walczak's personal intentions were in making the alleged statements.  ('76 SEC Br. (dkt. #63) 1.)  The Seventh Circuit has previously excluded testimony of investor beliefs, finding that "testimony of the . . . customers would have improperly shifted the jury's attention away from the knowledge and intent of [the defendant] and focused instead on the beliefs of the victims of the alleged scheme to defraud."  *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991).  In response, Walczak again suggests that investors should be allowed to testify as to how they interpreted his allegedly misleading information and statements.  (' 76 Def.'s Opp'n. (dkt. #119) 1.)

Certainly, how investors understood and valued Walczak's statements at the time made is relevant.  However, what is *not* relevant is whether or not any specific investor believed Walczak was being truthful or whether they felt defrauded.  Thus, defendant may ask witnesses what they *understood* Walczak's words or documents to mean, and whether they acted on or did not act upon them, but may not ask what they thought about Walczak's sincerity or intent, nor what they now think with the benefit of hindsight.

If the parties need more clarity on what is and is not permissible, they should be prepared with specific proffers of potential testimony at the FPTC.  Regardless, the motion is GRANTED.

### 6. TO EXCLUDE MATERIALITY CONTESTS AND DEFENDANT'S ARGUMENTS THAT NO STATEMENT BY WALCZAK IS COMPLETE UNLESS ONE CONSIDERS THE ENTIRE RECORD ('76 DKT. #64)

The SEC further requests that Walczak be barred from getting into "materiality contests" or arguing that no statement is "complete" without a view of the whole record. ('76 SEC Br. (dkt. #65) 1.)  Specifically, the SEC posits that Walczak will attempt to argue that his misstatements were immaterial because he made other, more material representations, like not guaranteeing that losses would be kept below 8%.  (*Id*. at 2-3.)  In response, Walczak rightly points out that the standard for materiality under securities laws is whether something would alter the "total mix of information," of which his other statements could certainly be relevant.  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  The court agrees, therefore, that Walczak's equivocations about risk management *are* relevant to the question of what he actually promised investors and the materiality of his representations regarding the use of OptionVue software in the "total mix" of the information provided investors.  Of course, whether the jury will be convinced is another matter entirely.

Regarding context, Walczak represents that he does not intend to present the "entire record" at trial, nor would this court allow it, but he argues that the jury should "be given access to the 'total mix' of information that was available to investors in the Fund at the time" for reference during their deliberations.  ('76 Def.'s Opp'n. (dkt. #116) 8.)  The

10

court strongly disagrees, particularly when the information available to investors consists of tomes of disclosures and hours upon hours of call transcripts.  Not only would such voluminous materials tend to overwhelm and confuse a lay jury more than assist them, but it would allow defendant to argue that *any* statement he might have made pale in materiality compared to the many other statements made.  Instead, if Walczak believes that other portions of the materials provided to investors rebuts or offers important context to plaintiffs' identified misrepresentations, he should be prepared to present those materials through a witness and admit it into evidence, then argue accordingly in closing. As such, this motion is GRANTED IN PART and DENIED IN PART.

### 7. TO EXCLUDE EVIDECE AND ARGUMENT ABOUT THE EFFECT OF THE CASE ON DEFENDANT ('76 DKT. #66)

The SEC moves to exclude any argument about the effect of this case on Walczak's business or personal life, as such evidence is irrelevant.  ('76 SEC Br. (dkt. #82) 1.) Walczak suggests that he should be allowed to present such evidence to show that he took the allegations made by plaintiffs seriously.  ('76 Def.'s Opp'n. (dkt. #112) 1.)   How Walczak was affected by the investigation, however, has no bearing on whether Walczak was more or less likely to make misrepresentations beforehand, and bringing up any hardship associated with the plaintiffs' investigation and this litigation would be overly prejudicial.  This motion is GRANTED.

### 8. TO EXCLUDE EVIDENCE AND ARGUMENT THAT "BLAMES THE VICTIMS" ('76 DKT. #68)

The SEC also requests that Walczak be barred from arguing that investors were

negligent in investing in the Fund, as that is not a defense to securities fraud.  ('76 SEC Br. (dkt. #69) 1.)  Walczak agrees that negligence is not a defense, but points to Seventh Circuit precedent that there is no liability when "the buyer could not justifiably rely on the assurance of 'no risk' because he held the truth in his hand and should have read the memorandum." *Teamsters Loc. 282 Pension Tr. Fund v. Angelos*, 762 F.2d 522, 530 (7th Cir. 1985).  Under *Teamsters* then, defendant argues that even a blatant misstatement might not create liability if it was immaterial in the context of the total mix of information provided a hypothetical reasonable investor.  Ultimately, as previously discussed, the question of materiality will be for the jury to decide, including what a reasonable investor would or would not take away from defendant's statements and representations.  Thus, this motion is GRANTED IN PART AND DENIED IN PART.

### 9.  TO EXCLUDE EVIDENCE AND ARGUMENT ABOUT THE PRIVATE PUTATIVE CLASS ACTION AGAINST CATALYST ('76 DKT. #83)

The SEC next argues that Walczak should not be allowed to discuss a private putative class action filed against Walczak, which was settled.  ('76 SEC Br. (dkt. #84) 1.) Walczak opposes the motion but provides no information about how *or* why he should be allowed to discuss the class action; to the contrary, Walczak states that he will likely not bring up the issue at all.  ('76 Def.'s Opp'n. (dkt. 99) 2-3.)  Regardless, since the class action is *not* relevant to the issues before this jury, absent a proffer from defendant as to why he would need to introduce this information, the motion is GRANTED.

## 10. TO EXCLUDE THE OPINIONS AND TESTIMONY OF NORMAN J. HARRISON ('76 DKT. #72)

The SEC finally argues that the opinion of Norman J. Harrison should be fully struck, as he does not have specialized knowledge and his opinions are irrelevant. ('76 SEC Br. (dkt. #73) 1-2.) Regarding his qualifications, Harrison is a lawyer who worked with many funds, advising clients on regulatory compliance with securities laws, among others. ('76 Def.'s Opp'n. (dkt. #97) 3.) The SEC suggests that Harrison is unqualified, though, because he has never been a financial advisor, "nor has he ever taught, published or been qualified as an expert in this area." (*Id*. at 2.)

For an expert to be qualified, they should have "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Additionally, "a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). Indeed, an expert may be qualified even without academic training if they have sufficient experience in an area. (*Id*.)

Here, the overall experience and education of Harrison makes him qualified to provide opinions on the topic of the requirements of securities laws, but that is also the problem, since such opinions would generally usurp the function of the judge at trial and in some instances the function of the jury itself.

Specifically, Harrison is a trained lawyer with experience in securities enforcement, diligence, and fund operations. ('76 Harrison Report (dkt #41-38) 8.) His 30-year career has centered on advising investment firms and has even served as managing director of an investment advising firm with over $1.5 billion in assets. (*Id*.) He has also published

several articles about SEC investigations and compliance.  (*Id*. at 9.)  As such, Harrison is more than qualified to advise investment advisors on the law (and even, litigate their responsibilities), which is unfortunately what he largely does in his expert report.  Indeed, substantial portions of his report reads like a legal brief.  ('76 (Dkt. #36-44) 7-16, 26-28.) Far worse, the last two paragraphs of his report purport to opine on the ultimate fact issued reserved to the jury.  Neither are the role of an expert witness at trial.

The SEC also suggests that Harrison's opinion is an irrelevant sideshow, as it focuses on investment advisors' responsibilities rather than Walczak's.  ('76 SEC Br. (dkt. #73) 15-17.)  As the court noted earlier in this opinion, Walczak may argue that what reasonable investors knew or should have known based on the total mix of information provided them, since this goes to the question of materiality of defendant's alleged misrepresentations. Perhaps some portion of Harrison's opinions about what investment advisors typically review, and how they advise their clients is relevant, but the vast majority of the report is not.  Thus, this motion is GRANTED, subject to a narrow proffer by defendant of some, much smaller portion of his report.

## B.  Defendant's *Motions in Limine* ('75 DKT. #68, '76 DKT. #51)

### 1.  TO EXCLUDE EVIDENCE, TESTIMONY, OR REFERENCE TO ANY PECUNIARY GAIN OR LOSS BY INVESTORS

Defendant argues that evidence of any gain or loss by investors should be barred because it is irrelevant to any element of plaintiffs' claims.  ('75 Def.'s Br. (dkt. #68) 2) (citing *SEC v. Amer. Growth Funding II, LLC* (S.D.N.Y. No. 16 Civ. 828) (Dkt. No. 167 at 5).)  Defendant also argues that there is a significant difference between realized and

unrealized gains or losses, making references to general losses unhelpful.  (*Id*.)  In contrast, plaintiff CFTC argues that evidence of investor losses go to the issues of materiality and falsity.  ('75 Pl.'s Opp'n. (dkt 78) 1.) The CFTC also points out that this court actually rejected the same argument in *Amer. Growth*, ignoring that the decision "only refers to judges preventing defendants from using evidence that investors lost *no* money as a defense to fraudulent activity, sometimes referred to as a 'no harm, no foul' defense." *Sec. & Exch. Comm'n v. Bluepoint Inv. Couns.*, No. 19-CV-809-WMC, 2021 WL 5833207, at *3 (W.D. Wis. Dec. 9, 2021).

The fact that the court's ruling in *Ameri. Growth* is inapposite does not, however, make evidence of individual losses relevant in this case.  Given the nearly intractable question as to cause and affect of an individual's claimed loss, whether realized or unrealized, and the remoteness of proof of an individual's loss to the elements that plaintiffs must prove in this case as to the behavior of a hypothetical "reasonable investor," the court is inclined to find that proof of any investor's actual gain or loss is largely irrelevant to this case and likely to cause jury confusion.  This rings especially true as to an investing economy where buying and holding assets for long periods is commonplace. Absent further proffer by plaintiffs as to the actual relevance of investor losses or gain, whether realized or unrealized, this motion is GRANTED to avoid confusing a lay jury.

## 2.  TO EXCLUDE EVIDENCE, TESTIMONY, OR REFERENCE TO THE SEC INVESTIGATION AND CIVIL ENFORCEMENT ACTION

Walczak suggests that discussing a parallel SEC investigation during the CFTC trial would "invite the jury to infer improperly that the mere fact that the investigation was

conducted . . . tends to establish the wrongfulness of the alleged conduct." ('75 Def.'s Br. (dkt. #68) 3.)  However, since the SEC and CFTC cases have now been consolidated for trial, this issue is now moot and defendant's motion is DENIED.

### 3. TO EXCLUDE EVIDENCE, TESTIMONY, OR REFERENCE TO THE CFTC INVESTIGATION AND CIVIL ENFORCEMENT ACTION

Identical to the previous motion *in limine*, Walczak also seeks to bar any discussion of the CFTC investigation during the SEC trial.  ('75 Def.'s Br. (dkt. #51) 3.)  Again, due to consolidation, this motion is DENIED.

### 4. TO EXCLUDE EVIDENCE, TESTIMONY, OR REFERENCE TO THE AMOUNT WALCZAK EARNED IN FEES FOR MANAGEMENT OF THE FUND

Walczak next argues that any discussion of the amount he earned in fees would be irrelevant and prejudicial.  ('75 Def.'s Br. (dkt. #68) 3.)  He cites to Seventh Circuit precedent holding that economic circumstances are generally irrelevant to a trial.  *See Van Bumble v. Wal-Mart Stores, Inc.*, 407 F.3d 823 (7th Cir. 2005).  In response, plaintiffs argue that Walczak's earnings go to his motive to commit fraud in this case.  ('76 Pl.'s Opp'n. (dkt #123) 7.)  Given plaintiff's representation that Walczak was paid a percentage of the total assets under the fund, they make a fair point that his potential earnings could be probative of motive and state of mind, distinguishing this case from *Van Bumble*.  As such, the motion is DENIED.

### 5. TO EXCLUDE EVIDENCE, TESTIMONY, OR REFERENCE TO MISREPRESENTATIONS THAT HAVE NOT SPECIFICALLY BEEN IDENTIFIED BY PLAINTIFF

Defendant seeks to bar plaintiffs from referencing any alleged misrepresentations

16

that were not specifically identified by plaintiffs.  ('75 Def.'s Br. (dkt. #68) 4-5.)   In particular, he notes that plaintiff SEC gave a list of Walczak's alleged misrepresentations and omissions to defense counsel, but later brought up statements from outside that list. (*Id*.)  Given that the SEC and CFTC cases have been consolidated, there may be some confusion over which statements the two plaintiffs will specifically identify as misrepresentations at trial, but this does not give them free range to pursue misrepresentations not specifically identified in either plaintiffs' original complaints, amended pleadings, summary judgment briefing or formal discovery responses.  As such, plaintiffs should consolidate, identify and proffer a formal list by Friday, March 25, 2022, of specific alleged misrepresentations or omissions they intend to prove constitute actionable fraud by defendant, allowing defendant to object to any not previously disclosed on or before Wednesday, March 30th, and plaintiffs to reply by Friday, April 1st. Accordingly, this motion is GRANTED.

### 6.  TO EXCLUDE ADMISSION OF PLAINTIFF'S EXPERT REPORTS

Defendant seeks to bar the admission of expert reports at trial.  ('75 Def.'s Br. (dkt. #68) 7.)  Plaintiffs argue in response that the only material from expert reports that they may move to admit would be charts and tables.  ('75 Pl.'s Opp'n. (dkt. 79) 10.)  Generally, expert reports are classic hearsay and not admissible.   Thus, defendant's motion is GRANTED.

To the extent that either side will seek to move the actual admission of some portion of any expert report, whether as a 1006 summary or otherwise independently admissible under the Federal Rules of Evidence, they should designate it on their respective exhibit

list, so that any objections can be taken up in the ordinary course of the pretrial process. Similarly, to the extent that either side intends to use any charts or table from an expert report as a demonstrative exhibit to aid the jury's understanding in openings, the expert's testimony or closings, they will need to share them in advance with opposing counsel, so that objections can be addressed outside the jury's presence to avoid unnecessary delays at trial.

### 7.  TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT AS TO PLAINTIFF CFTC'S LOGO AND MISSION STATEMENT

Walczak next asks that the court bar reference to the CFTC's logo and mission statement, as it would "only serve to garner favor with the jury." ('75 Def.'s Br. (dkt. #68) 8.)  Defendant, though, does not cite any cases in support of this request.  Additionally, this court, when approached with a similar request in an earlier SEC case, found "this argument does not hold water: it simply makes sense to allow plaintiff to explain who it is and what the organization is charged with doing."  *Sec. & Exch. Comm'n v. Bluepoint Inv. Couns.*, No. 19-CV-809-WMC, 2021 WL 5833207, at *3 (W.D. Wis. Dec. 9, 2021).  As such, the motion is DENIED, except that anything even approaching overuse of either will be excluded as both cumulative and potentially, unfairly prejudicial.

### 8.  TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT AS TO EXTERNAL ECONOMIC EVENTS UNRELATED TO THIS CASE

Defendant seeks to preclude plaintiffs from referencing external economic events during the trial, such as the 2008 market crash, suggesting they are irrelevant.  ('75 Def.'s Br. (dkt. #68) 8.)  While the plaintiffs do not oppose the exclusion of stray references to

outside economic events ('76 Pl.'s Opp'n. (dkt #123) 10), the CFTC notes that plaintiffs should be able to rebut any claim that large market swings are low-probability events if defendant opens that door.  ('75 Pl.'s Opp'n. (dkt. #79) 10-11.)  To the extent that this motion *in limine* is unopposed, therefore, it is GRANTED subject to the defendant "opening the door."

### 9. TO EXCLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATING TO VERACITY OF INVESTMENT OBJECTIVE

Walczak argues that plaintiffs should be barred from discussing the fund's investment objective, as it is not a promise of any particular investment strategy actionable under securities laws.  (Def.'s Br. (dkt. #51) 6-7.)  Walczak also argues that plaintiffs never identified the fund objective as a misrepresentation, which if allowed to be referenced now would deny him fair notice of that claim.  (*Id*.)  The court does not see a reason to bar all discussion of the fund's stated objective, given that it is plainly relevant to what investors would have found material and provides important context to the jury about the investment itself.  If the plaintiffs were to identify elements of the investment objective as misrepresentations or part of its claim of material omissions, however, it could only do so to the extent previously, specifically disclosed, as the court just ruled.  As such, this motion is DENIED IN PART AND GRANTED IN PART.

### 10. TO EXCLUDE CERTAIN TESTIMONY OF NEAL D. PEARSON ('76 DKT. #52)

Defendant further moves to exclude portions of Neal Pearson's testimony, arguing that his opinion on how Walczak's actions comported with the stated investment objective

is irrelevant and his opinion is unreliable when discussing volatility.  ('76 Def.'s Br. (dkt. #52) 3.)  This first argument harkens back to defendant's previous motion *in limine* seeking to bar the SEC from discussing the fund's investment objective; however, the investment objective is a part of the Fund's prospectus.  While the investment objective may or may not be an actionable promise, it certainly goes to the "total mix" of information available to the investors, making Pearson's opinion relevant to materiality, if nothing else.  The SEC also helpfully notes that defendant's own expert, Michael De Laval, opines on whether Walczak complied with the statements in the prospectus, making it reasonable that the SEC's expert also opines on the matter.  ('76 SEC Opp'n. (dkt #100) 3.)

Regarding the purported unreliability of Pearson's opinion, defendant argues that Pearson has not sufficiently shown the basis for his opinions on volatility.  While that may be a weakness in Pearson's report, it is not a reason to bar the admission of his opinions. Walczak does not argue that Pearson failed to provide any of his underlying materials; simply that they contain vague and undefined terms.  Instead of barring a section of Pearson's report as unreliable, however, defendant will be able to cross-examine Pearson on the foundation of his opinions, as "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert,* 509 U.S. at 596.

## 11. TO EXCLUDE CERTAIN TESTIMONY OF ARTHUR B. LABY ('76 DKT. #53)

Defendant also seeks to exclude certain testimony of the SEC's expert Arthur Laby, arguing that his expert report impermissibly verges on legal and factual conclusions.  ('76

Def.'s Br. (dkt. #54) 3.)  As noted earlier, legal conclusions are prohibited under Rule 704, and other courts have similarly limited Laby's testimony to "how the facts of this case tie into the legal framework and the relevant industry," excluding any sections of the report offering legal conclusions.  *Goldenson v. Steffens*, No. 2:10-CV-00440-JAW, 2013 WL 682844, at *13 (D. Me. Feb. 25, 2013); *see also United States Sec. & Exch. Comm'n v. Grenda Grp., LLC*, No. 1:18-CV-00954-CCR, 2021 WL 1955330, at *2 (W.D.N.Y. May 17, 2021) (granting "[d]efendants' request to exclude Mr. Laby's opinion to the extent it offers a conclusion of law").  Plaintiff SEC agrees that experts should not come to ultimate conclusions but argues that Laby's opinion does not do so.  ('76 SEC Opp'n. (dkt. #121) 5-6.)  The bigger problem at hand is that while defendant only seeks to exclude "certain testimony" of the expert, he gives insufficient guidance on those portions of the report he is challenging.  Looking at the report as a whole, Laby appears to steer clear of legal analysis. Thus, while the court agrees that an expert may not testify to legal conclusions, if defendant wishes to have portions of Laby's report stricken, he should be prepared to proffer specific objections to the report at the FPTC.

Defendant also argues that Laby's analysis of the facts of the case should be excluded because he has no expertise in interpreting transcripts and no personal knowledge of the events.  ('76 Def. Br. (dkt. #54) 11.)  This argument is fairly unpersuasive, as one aspect of relevance is "whether expert testimony proffered in the case is sufficiently tied to the facts of the case."  *Daubert* at 591 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985).  Thus, Laby is permitted to apply his understanding of the facts of the case to the underlying legal framework.  To the extent that defendant believes the factual

underpinning of Laby's opinion is incorrect, he may highlight that point during cross-examination. *Daubert* at 596 (holding that, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). As such, this motion is GRANTED IN PART and DENIED IN PART pending specific proffers by defendant's counsel at the FPTC.

### 12. TO BAR ANY USE OF OR TESTIMONY REGARDING BRATTLE GROUP ANALYSIS BY PLAINTIFFS ('76 DKT. #55)

Finally, Walczak seeks to bar plaintiffs from making any reference to an analysis done by the Brattle Group, including striking any reference in Pearson's testimony or report, given its established conflicts of interest. ('76 Def.'s Br. (dkt. #55) 1-2). Specifically, defendant originally hired the Brattle Group as its expert consultant on settlement and damages in this case. (*Id*.) Plaintiffs' expert Pearson, however, also contracted the Brattle Group, which provided various volatility analyses included in his expert report. (*Id*. at 3-4.) Now, defendant asks that any use or analysis of the Brattle Group's work not be offered at trial by plaintiffs or its witnesses. (*Id*.)

In response, the SEC asserts that Walczak never gave confidential information to the Brattle Group, contracted with them for a total of four hours before this case was even filed, and was aware that the SEC's expert used the Brattle Group for months without raising any objection. ('76 SEC Opp'n. (dkt. #103) 1-2.) If true, it certainly seems that the extraordinary remedy of disqualifying any information from the Brattle Group would be unwarranted; however, the court will RESERVE on this motion and hear further

argument from both sides at the FPTC.

ORDER

IT IS ORDERED that:

1) Plaintiff CFTC's motion *in limine* ('75 (dkt. #63) and plaintiff SEC's motions *in limine* ('76 (dkts. #56, 58, 60, 62, 64, 66. 68, 72, 74, 83)) are GRANTED, DENIED AND RESERVED as set forth above.

2) Defendant's motions *in limine* ('75 (dkt. #68); '76 (dkts. #51, 52, 53, 55)) are GRANTED, DENIED AND RESERVED as set forth above.

3) Defendant Edward Walczak's Motion for Reconsideration ('76 (dkt. #91)) is GRANTED.

4) Plaintiff CFTC's Motion for Reconsideration ('75 (dkt. #81)) is DENIED AS MOOT.

5) Defendant's Motion to Strike Portions of the McCrary Rebuttal ('75 (dkt. #66)) is DENIED.

Entered this 23rd day of March, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge